IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTHONY ALSTON, #326-671 | * | |
| Petitioner | * | |
| v. | * | Civil Action Case No. JKB-11-929 |
| STATE OF MARYLAND and | * | |
| THE ATTORNEY GENERAL OF THE STATE OF MARYLAND | * | |
| Respondents | * | |

## MEMORANDUM

Pending is a petition for writ of habeas corpus under 28 U.S.C. § 2254 filed by self-represented petitioner Anthony Alston (Alston) and the State's response with exhibits.[1] Upon review of the pleadings, the court finds no need for an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2); Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts. For reasons to follow, the petition will be denied.

### I. BACKGROUND

#### A. Claims Presented

In his petition, Alston presents two claims to challenge his 2004 conviction in the Circuit Court for Baltimore City for conspiracy to commit murder:

1) the trial court erred in denying his motion for mistrial and for a new trial where the jury was not sworn until after the State's case; and

2) the trial court erred in sentencing him to life imprisonment for conspiracy to commit murder where it was plausible that the jury found him guilty of conspiracy to commit second-degree murder. Petition, pp. 8-9, ¶ 15.

---

[1] Although granted an opportunity to reply (ECF No. 6), petitioner has not done so.

### B. Procedural History

On June 15, 2004, a jury sitting in the Circuit Court for Baltimore City found Alston guilty of conspiracy to commit murder and acquitted him of first-degree murder, second-degree murder, and related handgun offenses. On March 3, 2005, Alston was sentenced to life imprisonment. His conviction was affirmed on appeal by the Court of Special Appeals of Maryland in a reported opinion filed on October 3, 2007. Alston then petitioned for a writ of certiorari in the Court of Appeals of Maryland. The Court of Appeals granted review, and after briefing and argument, affirmed the judgment of the Court of Special Appeals by reported opinion filed on May 11, 2010. Alston has not sought to collaterally attack his judgment of conviction in the state courts by way of a petition for post-conviction relief.

### C. Facts

#### 1. Trial

The relevant facts adduced at trial were summarized by the Court of Appeals of Maryland as follows:

> Testimony elicited at trial described the incidents that led to the death of the victim, Johnny Cabizza. [footnote omitted] Shervan Easton, an alleged accomplice and co-conspirator, who was granted immunity in exchange for his testimony, testified at Alston's trial that he had met Alston at around noon on July 10, 2003, along with another individual named "El," at the main office of their employer in Capitol Heights, Maryland. [footnote omitted]. Easton stated that the three men chatted briefly and then decided to drive to Baltimore to "get some blow, some heroin." Easton drove a blue Ford van and Alston and El followed him in a red Kia automobile. Once in Baltimore, they located a group of four or five teenagers sitting on a stoop at the corner of Edmondson Avenue and an alley. They asked the group if there "was anything out, and they said, yes, you know, just walk around the corner." Easton and Alston proceeded around the corner while El stayed behind. Easton testified that, as he and Alston walked down the alley, "a little guy . . . pulled a pump shotgun from under a cardboard box and stuck it in my face and told me, that's right, throw

2

all the money down and take the phone off your hip too." Easton also indicated that, at the time of this encounter, Alston was "like 10 feet behind me."

After the robbery, Easton testified that he and Alston "backed off" slowly, and then the three men returned to their vehicles. As they drove away, Easton spotted one of the teenagers who had directed them down the alley, riding a bicycle. Easton tried to turn his vehicle around to chase the teenager, but instead the vehicle struck a tree. Alston, Easton, and El continued to drive around the neighborhood searching for the person who had robbed them, but they eventually gave up and drove to a different part of Baltimore where they purchased heroin. They then returned to Easton's house in Anne Arundel County. According to Easton's testimony, once back at his house, Alston began to taunt Easton, saying, "hey, boy, you want your stuff back." When Easton responded that he "would like to have [his] stuff back," Alston asked for Easton's gun, a .380 Taurus pistol, and the three men returned to Baltimore in Alston's vehicle. Easton testified that, once they arrived in the neighborhood where the robbery occurred, Easton remained in the parked car while Alston and El walked through the alley searching for the individual who had earlier robbed Easton. After 15 to 20 minutes, Easton heard two or three gunshots, followed by Alston and El returning to the car at a "fast jog."

When the police responded to a call for a shooting at about 5 p.m. on July 10, 2003, in the 1800 block of Edmondson Avenue, they found Johnny Cabizza lying on the sidewalk bleeding from multiple gunshot wounds. Cabizza was taken to a hospital where he was pronounced dead. A firearms examiner of the Baltimore City Police Department testified that the bullets removed from Cabizza's body, as well as the cartridges recovered from the scene, came from a .380 pistol, and that all of the cartridges recovered had come from one gun, likely a Taurus or Beretta semiautomatic pistol.

After discovering Easton's cell phone on the body of the victim, the police located Easton at his home on July 11, 2003, at approximately 3 a.m., and brought him to the police station for questioning. During the course of the investigation, Easton was granted immunity in return for his cooperation and agreement to testify for the State. In addition to Easton's testimony, three of the teenagers who had initially directed Easton and Alston to the alley testified on behalf of the State. In some respects their testimony corroborated Easton's testimony, and in other respects it differed somewhat.

Resp. Ex.13, pp. 2-4.

### 2. Direct Appeal

#### a. Court of Special Appeals of Maryland

On direct appeal to the Court of Special Appeals of Maryland, Alston raised four questions:

> 1. Did the trial court err in denying Alston's motions for a mistrial and for a new trial where the jury was not sworn until after the essential conclusion of the State's case?
>
> 2. Did the trial court err in permitting an in-court identification by a witness whose pre-trial identification had been suppressed as the product of improper suggestion and not reliable?
>
> 3. Did the trial court err in sentencing Alston to life for conspiracy to commit murder where under the instructions given the jury could have found Alston was guilty only of conspiracy to commit second degree murder?
>
> 4. Was the evidence insufficient to sustain a conviction of conspiracy to murder where the only pertinent evidence was direct evidence from an alleged co-conspirator establishing at most an agreement to commit robbery?

Resp. Ex. 6, p. 2.

#### b. Court of Appeals of Maryland

After the Court of Special Appeals affirmed Alston's judgment of conviction, Alston filed a petition for a writ of certiorari in the Court of Appeals of Maryland, presenting two questions:[2]

> 1. Did the trial court err in denying Alston's motions for a mistrial and for a new trial where the jury was not sworn until after the essential conclusion of the State's case?
>
> 2. Did the trial court err in sentencing Alston to life for conspiracy to commit murder where under the instructions given the jury could have found Alston was guilty only of conspiracy to commit second-degree murder?

---

[2] The questions presented to the Court of Appeals are substantially the same as those presented in Alston's federal habeas petition.

Resp. Ex. 9, p. 2. Maryland's highest appellate court granted review and later affirmed the judgment of the Court of Special Appeals.

### i. Belated Administration of Jury Oath Claim

The Court of Appeals rejected the claim of error for belatedly administering the jury oath, ruling that it constituted harmless error under the facts presented. The court held as follows:

> In *Harris v. State, supra*, 406 Md. at 129, 956 A.2d at 212, this Court held "that principles of waiver and harmless error are inapplicable when a jury in a criminal case has never been sworn." We held that "a jury which has never been sworn falls into the same 'structural error' category as a defective reasonable doubt instruction, the denial of a right to a jury trial, the total deprivation of counsel," etc., and that, therefore, "the complete failure to swear the jury can never be harmless error." *Harris*, 406 Md. at 130, 956 A.2d at 213.
>
> In reaching these conclusions in *Harris*, this Court pointed out that Article 5 of the Maryland Declaration of Rights grants to litigants the right to a common law jury, and, to be "legally constituted," a common law jury must be sworn, *Harris*, 406 Md. at 124-129, 956 A.2d at 209-213. *See also* Maryland Rule 4-312(f) (referring to jurors impanelled to hear the case as "sworn jurors"). The *Harris* opinion also relied on numerous cases which "have held that a sworn jury is an element of an 'impartial' jury," guaranteed by Article 21 of the Maryland Declaration of Rights. *Harris*, 406 Md. at 125-129, 956 A.2d at 209-213. Moreover, in Harris we reviewed an almost unanimous line of cases in other jurisdictions holding that the harmless error principle has no application when a defendant is convicted by a jury which was never sworn. Finally, we noted in *Harris*, 406 Md. at 131-132, 956 A.2d at 213-214, that, under double jeopardy principles, jeopardy attaches in a criminal jury trial when the jury is sworn. If the jury is never sworn, the accused arguably has never been placed in jeopardy and, therefore, runs the risk of being prosecuted a second time for the same offense.
>
> Turning to the present case, the belated administration of the oath to the jurors clearly violated Maryland Rule 4-312(f). Consequently, it constituted error. The pertinent issues are whether the harmless error doctrine is applicable and, if applicable, whether the error was harmless.
>
> Unlike *Harris*, the present case does not involve a jury which was never sworn. The jury in this case was administered the oath near the end of the

prosecution's introduction of evidence, and the trial judge instructed the jury that it should treat the oath as if "it were administered at the beginning of the case." This difference between the instant case and *Harris* is most significant. The reasons set forth in *Harris*, for holding inapplicable the harmless error doctrine, are absent here. The jury in this case, having been sworn, was a "legally constituted" common law jury. It did not lack impartiality because of the absence of an oath. Because the oath was administered, even though belatedly, jeopardy attached. Any attempt to prosecute Alston again for the same offenses charged in this case would be prohibited by double jeopardy principles.

As noted in *Harris*, 406 Md. at 126-129, 956 A.2d at 210-212, cases in other jurisdictions are in conflict with regard to the applicability of the harmless error principle when a jury is belatedly sworn. Nevertheless, a substantial majority of the cases have held that, as long as the oath is administered before the jury begins deliberations, the harmless error doctrine is applicable. *See, e.g., State v. Godfrey*, 136 Ariz. 471, 472, 666 P.2d 1080, 1081 (1983) (After reviewing cases from several states, the court concluded: "These cases exemplify the apparent majority view that a failure to swear the jury until the case has commenced is generally harmless error . . . where there is no actual prejudice shown and the oath is administered prior to deliberations"); *People v. Clouse*, 859 P.2d 228, 233 (Colo. App. 1992) ("[W]e conclude that the failure to swear in the jury at this stage of the trial constituted harmless error. . . . The record confirms that the jury was sworn in long before deliberations, and the trial court informed the jury that the oath applied retroactively"); *Adams v. State*, 286 Ga. 496, 498, 690 S.E.2d 171 (2010) ("[I]n the absence of a showing of actual prejudice . . ., there is no reversible error if a belated oath is given prior to the jury's deliberations"); *People v. Abadia,* 328 Ill.App.3d 669, 677, 767 N.E.2d 341, 349, 262 Ill. Dec. 881 (2001), leave to appeal denied, 201 Ill. 2d 575, 786 N.E.2d 187, 271 Ill. Dec. 929 (2002) ("[F]ailing to administer the juror's oath until after the close of the government's case but before deliberation was harmless error," *citing United States v. Hopkins,* 458 F.2d 1353, 1354 (5th Cir. 1972)); *State v. Apodaca,* 105 N.M. 650, 654, 735 P.2d 1156, 1160 (1987) ("Although a jury's oath is not a mere formality, . . . where the jury is sworn during trial, but prior to commencement [of] deliberations upon the verdict, the error does not warrant reversal in the absence of prejudice"); *People v. Morales,* 168 A.D.2d 85, 89, 570 N.Y.S.2d 831, 833 (1991) ("[T]he jury was sworn prior to deliberations," and "the delay in swearing the jury constituted harmless error"); *State v. Roberge*, 155 Vt. 121, 122-123, 582 A.2d 142, 143 (1990) ("[A]bsent . . . a showing of prejudice by the delay in swearing, there is no reversible error where a jury is sworn before deliberations in a criminal case"); *State v. Block*, 170 Wis.2d 676, 682, 489 N.W.2d 715, 717-718 (1992) (The jury was not sworn until six prosecution witnesses had testified, and the court held:

"Although the trial court here could have in the reasoned exercise of its discretion granted defendant's mistrial motion," nonetheless "[a]bsent prejudice, reversal is not warranted"). *See also, e.g., Cooper v. Campbell, Superintendent, Arkansas Department of Correction*, 597 F.2d 628, 629 (8th Cir. 1979), *cert. denied*, 444 U.S. 852, 100 S. Ct. 106, 62 L. Ed. 2d 69 (1979); *State v. Gallow*, 452 So.2d 1288, 1290 (La. App. 1984); *State v. Saybolt*, 461 N.W.2d 729, 736-737 (Minn. App. 1990); *Lester v. State*, 767 So. 2d 219, 223 (Miss. App. 2000); *State v. Barone*, 329 Ore. 210, 227, 986 P.2d 5, 17-18 (1999).

We agree with the majority view that draws a distinction between (1) a jury which is never sworn or not sworn prior to deliberations, and (2) a jury that is belatedly sworn, but the oath is administered before the commencement of jury deliberations. As previously discussed, the reasons for treating the former as structural error do not apply to the latter. Accordingly, in the latter situation, the error is subject to a harmless error analysis. Where the defendant is not prejudiced by the delay, the late administration of the oath will ordinarily cure the error.

The Maryland standard for determining whether error in a criminal case is harmless was set forth in the leading case of *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665, 678 (1976), as follows:

> "We conclude that when an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed 'harmless' and a reversal is mandated."

This standard has been reiterated by the Court countless times. For recent cases, *see, e.g., Lancaster v. State*, 410 Md. 352, 369, 978 A.2d 717, 727 (2009); *State v. Blackwell*, 408 Md. 677, 698, 971 A.2d 296, 308 (2009); *Parker v. State*, 408 Md. 428, 446, 970 A.2d 320, 331 (2009); *Johnson v. State*, 408 Md. 204, 229, 969 A.2d 262, 276 (2009); *Tucker v. State*, 407 Md. 368, 382-383, 965 A.2d 900, 908-909 (2009); *Taylor v. State*, 407 Md. 137, 164-165, 963 A.2d 197, 213 (2009); *Hutchinson v. State*, 406 Md. 219, 227, 958 A.2d 284, 288 (2008), and cases there cited.

In the present case we are satisfied, beyond a reasonable doubt, that the tardiness in the administration of the oath to the jury did not affect the verdicts. Consequently, the belated swearing of the jury did not prejudice Alston.

Resp. Ex. 13, pp. 11-16.

Specifically, the Court of Appeals noted that after the jurors were sworn, the trial judge carefully instructed them to treat the oath "as though it were administered at the beginning of the case…." *Id.* Further he asked the jury if there was any that "would affect your ability to deliberate and decide this case in accordance with the oath you've just been given, in accordance with the evidence in this case, [and] in accordance with the law. …" *Id.* The trial judge posed these questions to the jury as a whole and then to each juror individually. Each juror responded in the negative. The Court of Appeals further observed that the record contained no indication of improper conversations or activities by jurors during the period prior to the administration of the oath. *See id,* p. 17. In addition, the jury's verdicts of acquittal on the murder and handgun charges indicated that the jurors conscientiously and impartially considered each count and that they were not prejudiced against the defendant. *See id.* For all these reasons, the Court of Appeals determined that the trial court's failure to administer the oath to jurors at the start of trial constituted harmless error.

### ii. Jury Instruction Claim

The Court of Appeals determined Alston waived his second claim by failing to raise an objection at trial. Further, the Court of Appeals emphasized that even if Alston's waiver of this claim were excused, the result would be the same because there was no improper jury instruction. The Court of Appeals stated:

> The second issue raised in the certiorari petition is the defendant's contention that he was improperly convicted and sentenced for conspiracy to commit first degree murder. As previously mentioned, defense counsel at the hearing on the motion for a new trial argued, for the first time, that the "conspiracy to commit murder" jury instruction was deficient because "[i]t was not specific as to whether or not he [the defendant] was charged with conspiracy to commit first or second degree murder." The trial judge rejected this argument on alternative grounds. First, the trial judge pointed out that

8

defense counsel had not requested a different jury instruction or objected to the instruction which was given. Second, the trial judge alternatively held that conspiracy to commit murder, by its very nature, is conspiracy to commit first degree murder, and that there is no such offense in Maryland as conspiracy to commit second degree murder. Under the circumstances of this case, both grounds relied on by the trial judge in declining to grant the defendant's motion for a new trial are sound.

As to the trial judge's first ground, the defendant in this Court maintains that he is not challenging the jury instructions. Nevertheless, his argument is directly aimed at the jury instructions. Thus, the defendant concludes his argument as follows (defendant's brief in this Court at 33, emphasis supplied):

> "But this is not a challenge to the jury instructions. They were not wrong on their face; they simply lacked the precision necessary to guarantee an unambiguous verdict on the charge of conspiracy to murder."

At another place the defendant argues (*id*. at 32-33, some emphasis supplied and some in original):

> "The problem here is that, based on the instructions given, which in and of themselves were not incorrect, the jury could have found Alston guilty of conspiracy to murder, as they did, based on a belief that he had conspired to commit only second degree murder.
>
> "The jury was never instructed that there was no such crime [as conspiracy to commit second degree murder], nor were they told that they had to specifically find that Alston conspired to commit first-degree murder."

Despite the defendant's disclaimer that the jury instructions are not at issue, it is obvious that the defendant's complaint entirely revolves around the contention that the jury was not properly instructed on the conspiracy charge. As pointed out by the trial judge at the hearing on the motion for a new trial, the defendant's complaint regarding the jury instructions was not made until that post-trial hearing. Thus, we agree with the Court of Special Appeals that the defendant's objection to the jury instructions was waived.

Maryland Rule 4-325(b) and (e) provides as follows:

9

> "(b) Written requests. The parties may file written requests for instructions at or before the close of the evidence and shall do so at any time fixed by the court.
> *********
>
> (e) Objection. No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury. An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object."

> In the instant case, the defendant made no requests for instructions on conspiracy, and, as discussed above, he did not object to the instructions as given. As set forth in Maryland Rule 4-325(e), he may not "assign as error the giving or the failure to give" particular instructions on conspiracy to murder.

Resp. Ex. 13, pp. 18-20.

Further, the Court of Appeals found there was no improper jury instruction. The court explained:

> The defendant contends that, if properly instructed, "the jury could have found that Alston conspired to commit second degree murder" of the type based on an intent to inflict bodily harm (defendant's brief in this Court at 30). The defendant thus states that (*id*. at 31, emphasis supplied)
>
>> "the jury could very well have found that Alston conspired to commit grievous bodily harm of a kind that a reasonable person should know would be likely to result in death, *Thornton v. State*, 397 Md. 704, 713, 919 A.2d 678, 683 (2007), thus conspiring to commit second degree murder of that variety."
>
> An analysis of the offenses, however, shows that the defendant's argument is inconsistent with Maryland law relating to conspiracy and second degree murder. Under Maryland law, there can be no such thing as a

10

conspiracy to commit second degree murder of the intent-to-inflict-grievous bodily-harm variety.

This Court in *Mitchell v. State*, 363 Md. 130, 767 A.2d 844 (2001), after reviewing Maryland law concerning conspiracy and second degree murder, held that there was no such crime in Maryland as conspiracy to commit second degree murder based upon an intent to kill but without deliberation and premeditation. The Court did not decide whether there could be a conspiracy to commit other types of second degree murder. With regard to the type of second degree murder involved in *Mitchell*, Judge Wilner for the Court analyzed the elements of conspiracy and second degree intent-to-kill murder and concluded (*Mitchell*, 363 Md. at 149, 767 A.2d at 854):

> "[T]he kind of awareness and reflection necessary to achieve the unity of purpose and design for a conspiracy is essentially the same as that required for deliberation and premeditation. We think that . . . where the charge is made and the evidence shows that the defendant conspired to kill another person unlawfully and with malice aforethought, the conspiracy is necessarily one to commit murder in the first degree (even if a murder pursuant to the conspiracy never occurs or, for whatever reason, amounts to a second degree murder), as the agreement itself, for purposes of the conspiracy, would supply the necessary deliberation and premeditation."

An examination of conspiracy and second degree murder of the intent- to-inflict-grievous-bodily-harm variety leads to a result similar to the one reached in *Mitchell*.

In *State v. Johnson*, 367 Md. 418, 424, 788 A.2d 628, 632 (2002), Judge Battaglia for the Court summarized the nature of conspiracy as follows:

> "This Court consistently has defined conspiracy as the agreement between two or more people to achieve some unlawful purpose or to employ unlawful means in achieving a lawful purpose. See McMillian v. State, 325 Md. 272, 290-91, 600 A.2d 430, 439 (1992)(quoting Monoker v. State, 321 Md.214, 221, 582 A.2d 525, 528 (1990)); Apostoledes v. State, 323Md. 456, 461-62, 593 A.2d 1117, 1120 (1991) (quoting Townes v. State, 314 Md. 71, 75, 548 A.2d 832, 834 (1988)); Mason v. State, 302 Md. 434, 444, 488 A.2d 955, 960 (1985). We have further explained that,
>
>> 'The essence of a criminal conspiracy is an unlawful agreement. The agreement need not be

> formal or spoken, provided there is a meeting of
> the minds reflecting a unity of purpose and
> design. In Maryland, the crime is complete when
> the unlawful agreement is reached, and no overt
> act in furtherance of the agreement need be
> shown.'"

\*\*\*\*\*\*\*\*\*\*

Not only is the offense of conspiracy complete when the unlawful agreement is reached, but a conspiracy to commit a crime is entirely separate from the substantive crime. As this Court explained in *Grandison v. State*, 305 Md. 685, 759, 506 A.2d 580, 617 (1986), regarding conspiracy to murder,

> "once the agreement to murder has been made, the crime is
> complete without any further action. \* \* \* Conspiracy to murder
> requires an agreement, while murder, regardless of whether
> one is convicted as an accessory or a principal, requires the
> completed crime. Thus it is apparent that the conspiracy to
> murder is a separate and distinct crime from the substantive
> crime itself."

Another significant characteristic of conspiracy to commit a crime is that the defendant, to be found guilty of conspiracy, must have a specific intent to commit the offense which is the object of the conspiracy. The Court in *Mitchell v. State, supra*, 363 Md. at 146, 767 A.2d at 853, explained as follows:

> "As . . . courts have consistently held, . . . conspiracy is
> necessarily a specific intent crime; there must exist the specific
> intent to join with another person in the accomplishment of an
> unlawful purpose or a lawful purpose by unlawful means."

> "When the object of the conspiracy is the commission of another
> crime, as in conspiracy to commit murder, the specific intent
> required for the conspiracy is not only the intent required for the
> agreement but also, pursuant to that agreement, the intent to assist in
> some way in causing the crime to be committed."

\*\*\*\*\*\*\*\*\*\*

Turning to second degree murder of the intent-to-inflict-grievous-bodily-harm variety, Judge Greene for the Court in *Thornton v. State, supra*, 397 Md. 704, 919 A.2d 678, recently reviewed this offense. As emphasized throughout the *Thornton* opinion, what distinguishes this type of second degree murder from the other three types of second degree murder, as shown by its

name, is the element of intent. The Court first "note[d] that the State must prove that the defendant acted with specific intent to inflict grievous bodily harm and malice." *Thornton,* 397 Md. at 714, 919 A.2d at 683. With regard to the nature of the intent to inflict grievous bodily harm, the *Thornton* opinion also pointed out (397 Md. at 730, 919 A.2d at 693): "The requisite intent for murder of the intent-to-inflict-bodily-harm modality is a narrow concept." The Court, distinguishing the intent to do grievous bodily injury from the intent to kill, continued (397 Md. at 731-732, 919 A.2d at 694, emphasis in original):

> "Murder of the intent-to-inflict-grievous-bodily-harm type is, by definition, a specific intent crime, even though there is no conscious or purposeful design to kill the victim. *Fisher*, 367 Md. at 274, 786 A.2d at 739. In *Glenn*, 68 Md. App. at 390, 511 A.2d at 1116, the intermediate appellate court acknowledged that '[t]he critical distinction that needs to be made . . . is between the *results specifically intended*, not *between the presence or absence of a specific intent*. Although there is the purpose or design that the victim should die' [footnote omitted] (citations omitted). * * * The difference between specific intent-to-kill murder and specific intent to commit grievous bodily harm is in the result specifically intended * * *."

At another point, the Court in *Thornton* emphasized (397 Md. at 713, 919 A.2d at 683, footnote omitted, emphasis supplied):

> "We emphasize that where murder is predicated upon a theory of intent to commit grievous bodily harm, the intended harm must be grievous bodily harm and must be the legal equivalent of malice. Furthermore, in the context of a murder prosecution, intent to inflict grievous bodily harm means such harm that a reasonable person could or should know, under the circumstances, would likely result in death to the victim. *Because the crime involves an unintentional killing*, the defendant need not actually know that his conduct will result in the victim's death."

It is clear from *Thornton* that the intent-to-inflict-grievous-bodily-injury variety of second degree murder does not involve an intent to kill. An intent to murder, however, means an intent to kill with malice. *State v. Earp*, 319 Md. 156, 163-164, 571 A.2d 1227, 1231 (1990); *State v. Jenkins,* 307 Md. 501, 514-515, 515 A.2d 465, 471-472 (1986). And a conspiracy to murder means a malicious intent to kill with deliberation and premeditation, i.e., first degree murder, as the conspiracy necessarily supplies the elements of deliberation and

premeditation. *Mitchell v. State, supra*, 363 Md. 130, 767 A.2d 844.Consequently, a charge of conspiracy to murder logically excludes second degree murder based upon an intent to inflict grievous bodily harm. The intent elements of each offense are entirely separate and distinct.

Two cases cited above, *State v. Earp, supra*, 319 Md. 156, 571 A.2d 1227, and *State v. Jenkins, supra*, 307 Md. 501, 515 A.2d 465, while not involving charges of conspiracy to murder, are nevertheless very much in point regarding the elements of intent. In *State v. Earp*, the defendant was convicted in a nonjury trial of both attempted second degree murder based on a finding of intent to inflict serious bodily harm and assault with intent to maim. One issue in the case was, according to the Court (319 Md. at 162, 571 A.2d at 1231),

> "whether an intent to do grievous bodily harm, which satisfies the *mens rea* element in a consummated murder, suffices for a conviction of attempted murder when death does not result."

As is the case with conspiracy to murder, "[t]he specific intent required to prove an attempt is the intent to commit a particular crime, in this case murder." *Earp*, 319 Md. at 163, 571 A.2d at 1231. The Court in *Earp* then held as follows (319 Md. at 164, 571 A.2d at 1230):

> "The State, although agreeing that an intent to murder may consist of an intent to kill and the absence of justification, excuse, or mitigation, argues that an intent to commit grievous bodily harm will serve as a substitute for an intent to kill, as it does in the case of second degree murder. We do not agree. We hold, instead, that where an attempted murder is charged, the State must show a specific intent to kill - an intent to commit grievous bodily harm will not suffice."

Similarly, with regard to conspiracy to murder, which also requires the same specific intent to kill, an intent to commit grievous bodily harm will not suffice.

A few years earlier than *Earp, State v. Jenkins, supra*, 307 Md. at 510, 515 A.2d at 469, had reached a similar conclusion with regard to assault with intent to murder, saying:

> "Contrary to the State's premise, the critical element of assault with intent to murder, as the plain statutory language demonstrates, is an 'intent to murder.' The offense is not 'assault with intent to do grievous bodily harm,' which is how

14

> the State seems to view it."
>
> Consequently, we reject the defendant Alston's argument that the jury, if properly instructed, could have found that Alston was guilty of a conspiracy to commit second degree murder of the type based on an intent to inflict grievous bodily harm. There is no such offense under Maryland law. Alston was charged with conspiracy to murder which requires a specific intent to kill.

Resp. Ex 13, pp. 21-28.

## II. STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This standard is "difficult to meet." *Harrington v. Richter*, _ U.S_ , 131 S. Ct. 770, 786 (2011).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under section 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, _U.S. _, 130 S. Ct. 841, 849 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* _ U.S_, 130 S. Ct. 1855, 1862 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379.

16

## III.     DISCUSSION

Respondents assert that Alston's petition fails to identify a violation of constitutional or federal law, and therefore the claims presented are not cognizable under federal habeas review. Federal habeas review is limited to questions of federal and Constitution law; it does not extend to reexamination of a state court's interpretation and application of a state law. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (observing "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Wright v. Angelone*, 151 F.3d 151, 157 (4th Cir. 1998). Alston's claim regarding the belated jury oath is premised on violation of Maryland state law.[3] He states no basis for his claim of trial court error for failure to grant a new trial.

Alston cites no clearly established federal law as determined by the Supreme Court that prevented a trial court from swearing a jury after the State presented most of its evidence or prevented the court from sentencing a defendant to life in prison for conspiracy to commit murder. When more than one court has adjudicated a petitioner's claims, a federal habeas court analyzes the last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). In this case, the Court of Appeals of Maryland opinion provides a thorough and reasoned analysis of Alston's claims and applicable state law, and Alston does not show what clearly established federal law was applied unreasonably by the state court.

Notably, even if a federal law were implicated, Alston does not allege and the record does not suggest that the trial errors claimed had a "substantial and injurious effect or influence in determining the jury's verdict" to warrant habeas relief. *See Brecht v Abrahamson*, 507 U.S.

---

[3] Alston claims violations of the Maryland Declaration of Rights Articles 5 and 21 and Maryland Rule 4-312(f). Petition, p. 6, ¶ 15 A and B.

619, 638 (1987); *see also Fry v. Pliler*, 551 U.S. 112, 116 (2007) (federal court on state habeas review should apply *Brecht* standard to assess prejudicial impact of constitutional error in state court trial). Additionally, because the Court of Appeals of Maryland found Alston's jury instruction claim waived, it is in any event procedurally defaulted on federal habeas review.[4] For these reasons, there are no grounds to award federal habeas relief.

### IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability shall not issue unless there is "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. *See Miller–El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683–84 (4th Cir. 2001). The requisite standard has not been met; therefore, a certificate of appealability will be denied by separate order.

### V. CONCLUSION

For the above stated reasons, the court finds no grounds to award habeas corpus relief. The petition will be denied by separate order.

| October 26, 2011 | /s/ |
|---|---|
| Date | James K. Bredar |
|  | United States District Judge |

---

[4] By order entered July 20, 2011, this court explained the implication of procedural default to Alston and provided him with an opportunity to reply. ECF No. 6. Alston, however, did not file a reply.